UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND


JASON BOUDREAU                          :
                                        :
        v.                              :        C.A. No. 13-388S
                                        :
STEVE LUSSIER, et al.                   :


## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge


Pending before me for a report and recommendation (28 U.S.C. § 636(b)(1)(B)) are cross-motions for summary judgment filed by all parties to this action. Plaintiff moves offensively for summary judgment in his favor on all of his claims. (Document No. 157). Steve, John and Donald Lussier and Steve Sorel, the so-called "ATC Defendants,"[1] move defensively for summary judgment in their favor as to Counts I, II and IV. (Document No. 162). The City of Warwick and Detective Kevin Petit (the "Warwick Defendants") move defensively for summary judgment in their favor as to Counts I, II, III and V.[2] (Document No. 165). The City of Cranston and Officers Bagshaw, Weller and Carroll (the "Cranston Defendants") move defensively for summary judgment in their favor as to Counts I, II and V. (Document No. 174).

Plaintiff's First Amended Complaint alleges (1) illegal search and seizure in violation of the Fourth and Fourteenth Amendments; (2) the existence of an unlawful conspiracy to deprive Plaintiff of his civil rights under color of law in violation of 42 U.S.C. §1983; (3) false statements and material omissions of fact from Search Warrant Affidavits in violation of the Fourth and Fourteenth

---

[1] These Defendants are all affiliated with Plaintiff's former employer, Automatic Temperature Controls, Inc.

[2] Although Detective Petit is mentioned in Count IV (Paragraph 102), Plaintiff makes clear in Paragraph 91 that he "asserts this count against defendants Steve Lussier, John Lussier, and Steve Sorel, jointly and severally." (Document No. 8 at p. 17). Thus, Detective Petit is not sued in Count IV.

Amendments; (4) unlawful interception and disclosure of electronic communications in violation of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510, et seq.; and (5) municipal liability under 42 U.S.C. § 1983. Plaintiff's claims relate factually to a chain of events that culminated in a felony charge of possession of child pornography against him. See State v. Boudreau, P2-2012-0841A. Plaintiff pled nolo contendere to such charge in Rhode Island Superior Court on January 2, 2014 and received a five-year suspended sentence with probation.[3] Id.

**Facts**

According to Plaintiff, "[t]he events of this case occurred over roughly a ten (10) day period in June, 2011 with the majority of the causes of actions occurring between June 21, 2011 and June 24, 2011." (Document No. 219 at p. 2). Pursuant to Local Rule Cv 56(a)(1), Plaintiff filed an omnibus "Statement of Material Facts" as to which he contends there are no genuine issues in support of his Motion for Summary Judgment. (Document No. 158). In addition to filing Statements of Undisputed Facts in support of their Motions for Summary Judgment (Document Nos. 163, 166 and 175), each group of Defendants (ATC, Warwick and Cranston) filed a Statement of Disputed Facts in response to Plaintiff's Statement pursuant to Local Rule Cv 56(a)(3). (Document Nos. 207, 212 and 215). Plaintiff filed his own Statements of Disputed Facts in response to the Statement of Undisputed Facts filed by the ATC and Warwick Defendants (Document Nos. 171 and 178), as well as a Motion to Strike the Statement filed by the Cranston Defendants. (Document No. 187).[4] Finally, although not

---

[3] Pursuant to R.I. Gen. Laws § 12-18-3(b), the plea constitutes a criminal conviction. See also United States v. Patrone, 948 F.2d 813, 817 (1st Cir. 1991).

[4] Although the Motion to Strike has not been referred to me for determination at this stage of the proceeding, the arguments contained in Plaintiff's Motion and the Cranston Defendants' Opposition to such Motion (Document No. 214) have been considered in evaluating these Summary Judgment Motions.

explicitly authorized by the Rules, Plaintiff filed Replies to the Statement of Disputed Facts filed by the ATC and Warwick Defendants. (Document Nos. 219 and 221).

These Statements are intended to assist both the Court and the parties by bringing focus and clarity to which of the material facts are undisputed and which are disputed. Unfortunately, consistent with the history of this litigation, the Statements in this case are overly lengthy, unduly argumentative and hypertechnical as to detail, and thus do not bring any clarity to the table.

Despite these shortcomings, the Court is able to distill the following basic facts as either undisputed or undisputable. Plaintiff was employed by ATC as its Controller from September 2009 until June 24, 2011. Defendants Steven, John and Donald Lussier are shareholders of ATC. Defendant Steven Sorel was ATC's Information Technology ("IT") Manager at the relevant time. In connection with his employment at ATC, Plaintiff was provided with an office with a door, a Dell Precision Desktop office computer and a laptop computer.

On or about June 9, 2011, Plaintiff asked Sorel to perform some type of repair or maintenance work on his office computer. According to the ATC Defendants, while performing such work, Sorel discovered what appeared to be a list of deleted pornographic movie and photograph files on Plaintiff's office computer. Plaintiff denies that any such list of files was found or viewed.

At the time, the ATC Defendants were aware that Plaintiff had a pending criminal charge of second-degree child molestation. See State v. Boudreau, K2-2010-0725A.[5] On June 16, 2011, Steven Lussier purchased a computer monitoring software program called System Surveillance Pro ("SSP"). Sorel was directed to, and did, install SSP on Plaintiff's office computer.

---

[5] Plaintiff subsequently pled nolo contendere to that charge on March 14, 2012.

Although there is a technical dispute about the operation of SSP, it is undisputed that SSP produced "screen shots" of the computer screen at certain times and that these were sent to a test email account and also stored in a folder on the hard drive. According to the ATC Defendants, Sorel logged on to the test e-mail account on June 22, 2011 and viewed the screen shots collected on June 20, 2011, and found that some contained what appeared to be illegal child pornography. Steven Lussier also saw the screen shots.

Although the exact date is disputed, it is undisputed that Steven Lussier reported what was found to the Warwick Police Department at some point during the week beginning Monday, June 20, 2011. A meeting was held with Detective Petit about what was found on Plaintiff's office computer. The office computer was owned by ATC. On the morning of June 24, 2011, John Lussier and Steve Sorel turned that computer over to Detective Petit at the Rhode Island State Police headquarters. Sorel provided a written witness statement to Detective Petit. John Lussier signed a consent to search form for such computer on June 24, 2011.[6]

On June 24, 2011, Detective Petit examined the computer and discovered images he believed were illegal child pornography.[7] He further learned from Sorel that Plaintiff had a company laptop computer. As part of his investigation, Detective Petit suggested that John Lussier request that Plaintiff return the laptop to ATC as soon as possible. (Document No. 159-23 at p. 4).

---

[6] Plaintiff disputes the authenticity of the consent form but provides no competent evidence supporting his position. (Document No. 171 at p. 11). Rather, he argues that "no evidence exists" to prove that the consent form is authentic. Id. However, the ATC Defendants have provided a signed copy of the form (dated June 24, 2011) and reference the uncontroverted deposition testimony of John Lussier and Detective Petit attesting to the signing of the form at the time. (Document No. 163 at p. 7). Plaintiff has not presented a genuine issue of fact regarding the authenticity of the consent form.

[7] Detective Petit's findings as to the presence of illegal child pornography on the computer were confirmed by a forensic examination of the computer hard drive conducted by Analyst Brittnee Morgan of the Rhode Island State Police computer crimes unit in September 2013. (See Document No. 161-18).

Detective Petit conducted a background record check on Plaintiff and learned that his Rhode Island driver's license was suspended. Detective Petit advised the Cranston Police that Plaintiff was a suspect in a child pornography investigation, currently had a suspended license and would likely be returning to ATC's office in Cranston unlawfully driving a blue Toyota. Plaintiff was arrested by the Cranston Police on June 24, 2011 for driving on a suspended license.[8] Plaintiff's blue Toyota was impounded and towed. In addition, a green Ford owned by Plaintiff and parked on ATC property was also towed and impounded at the request of ATC on that day.

On July 6, 2011, Detective Petit applied for and was granted a search warrant for certain computers and other electronic devices seized in connection with Plaintiff's arrest and the impoundment of his vehicles. Also, on July 18, 2011, Detective Petit applied for and was granted a search warrant for Plaintiff's residence. Both Search Warrants related to the investigation of Plaintiff for possession of child pornography. The Search Warrant for Plaintiff's residence was executed on July 20, 2011. He was also arrested that day and charged with possession of child pornography.

**Standard of Review**

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, the Court must review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. Cadle Co. v. Hayes, 116 F.3d 957, 959 (1st Cir. 1997).

---

[8] Plaintiff pled nolo contendere to this misdemeanor offense and was assessed court costs on July 7, 2011. See State v. Boudreau, 31-2011-04648.

Summary judgment involves shifting burdens between the moving and nonmoving parties. Initially, the burden requires the moving party to aver "an absence of evidence to support the nonmoving party's case." <u>Garside v. Osco Drug, Inc.</u>, 895 F.2d 46, 48 (1st Cir. 1990) (<u>quoting</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986)). Once the moving party meets this burden, the burden falls upon the nonmoving party, who must oppose the motion by presenting facts that show a genuine "trialworthy issue remains." <u>Cadle</u>, 116 F.3d at 960 (<u>citing</u> <u>Nat'l Amusements, Inc. v. Town of Dedham</u>, 43 F.3d 731, 735 (1st Cir. 1995); <u>Maldonado-Denis v. Castillo-Rodriguez</u>, 23 F.3d 576, 581 (1st Cir. 1994)). An issue of fact is "genuine" if it "may reasonably be resolved in favor of either party." <u>Id.</u> (<u>citing</u> <u>Maldonado-Denis</u>, 23 F.3d at 581).

To oppose the motion successfully, the nonmoving party must present affirmative evidence to rebut the motion. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256-257 (1986). "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, [or] unsupported speculation." <u>Medina-Munoz v. R.J. Reynolds Tobacco Co.</u>, 896 F.2d 5, 8 (1st Cir. 1990). Moreover, the "evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve." <u>Id.</u> (<u>quoting</u> <u>Mack v. Great Atl. & Pac. Tea Co.</u>, 871 F.2d 179, 181 (1st Cir. 1989)). Therefore, to defeat a properly supported motion for summary judgment, the nonmoving party must establish a trialworthy issue by presenting "enough competent evidence to enable a finding favorable to the nonmoving party." <u>Goldman v. First Nat'l Bank of Boston</u>, 985 F.2d 1113, 1116 (1st Cir. 1993) (<u>citing</u> <u>Anderson</u>, 477 U.S. at 249).

Cross-motions for summary judgment "simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on the facts that are not disputed." <u>Barnes v. Fleet</u>

Nat'l Bank, N.A., 370 F.3d 164, 170 (1st Cir. 2004) (internal quotation marks and citation omitted). The legal standard for summary judgment is not changed when parties file cross-motions for summary judgment. Adria Int'l Group, Inc. v. Ferre Dev. Inc., 241 F.3d 103, 107 (1st Cir. 2001). "The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." Bienkowski v. Northeastern Univ., 285 F.3d 138, 140 (1st Cir. 2002) (internal quotation marks and citation omitted).

**Discussion**

**A.      The Cranston Defendants**

In Count I, Plaintiff alleges that the Cranston Defendants deprived him of his Fourth Amendment rights by searching his 1995 Ford and 2004 Toyota without a warrant and seizing lawfully-possessed items. In Count II, he alleges that these violations, as well as his arrest and detention by the Cranston Police, were committed pursuant a conspiracy to deprive rights under color of law. Both of these counts are brought pursuant to 42 U.S.C. § 1983.

It is undisputed that Plaintiff was arrested by the Cranston Police while driving with a suspended license, that Plaintiff's license was in fact suspended at the time and that the arresting officers were aware of that fact prior to the arrest. Thus, it is undisputable that the Cranston Defendants had probable cause to stop and arrest Plaintiff. Plaintiff contends that the arrest was "false" because he was "entrapped to commit a minor traffic offense." (Document No. 197 at p. 35). However, Plaintiff cites absolutely no legal authority supporting this argument or factual support for his entrapment claim. The defense of entrapment requires government inducement of the criminal conduct and an absence of predisposition on the part of the individual to engage in the criminal conduct. See United States v. Gonzalez-Perez, 778 F.3d 3, 11 (1st Cir. 2015). "Inducement requires not only giving the [individual] the opportunity to commit the crime but also a 'plus' factor of

government overreaching" such as use of "excessive pressure" including intimidation, threats or dogged insistence. Id. (citing United States v. Guevara, 706 F.3d 38, 46 (1st Cir. 2013)). "Operations which merely give a[n] [individual] an opportunity to commit a crime, including sting operations, ordinarily do not constitute entrapment." United States v. Davila-Nieves, 670 F.3d 1, 9 (1st Cir. 2012). Plaintiff has presented no competent evidence to support a finding of improper government inducement as to his decision to drive with a suspended license.

He also alleges that he was unlawfully detained for the traffic offense and that the Cranston Police could have simply "release[d] him on a summons to appear." Id. at p. 37. The fact that the Cranston Police could have done that does not necessarily make his arrest and temporary detention unlawful. Furthermore, Plaintiff fails to acknowledge that, at the time he committed this "minor traffic offense," he was on bail for a pending felony charge and thus obligated, as a standard condition of any bail, to maintain good behavior, i.e., not break the law. See State v. Boudreau, K2-2010-0725A. Again, Plaintiff has not pointed to any competent evidence to support a claim of unlawful detention.

Plaintiff also takes issue with the warrantless searches of his 2004 Toyota and 1995 Ford and the seizure of various lawfully-possessed items by the Cranston Police.[9] (See Document No. 8 at pp. 14-15). Plaintiff also alleges that such actions were unlawfully motivated to assist Detective Petit in his child pornography investigation. Id. at p. 16. It is undisputed that Plaintiff's two vehicles were parked on ATC property at the time of his arrest. Plaintiff also offers no competent evidence to dispute the Cranston Defendants' assertion that Defendant John Lussier requested that Plaintiff's property be removed from the ATC premises due to fear of retaliation if Plaintiff later returned to retrieve it.

---

[9] In his Brief, Plaintiff alleges that Defendant Bagshaw conducted an unlawful, warrantless search of Plaintiff's ATC office. (Document No. 197 at pp. 6-7). However, Plaintiff does not make those specific allegations in either Count I or II of his First Amended Complaint. (See Document No. 8 at pp. 14-16). Therefore, such claim is not properly before the Court.

Here, Plaintiff's vehicles were towed and his property seized pursuant to the Cranston Police's "community caretaking function." See United States v. Coccia, 446 F.3d 233, 238-239 (1st Cir. 2006). "Courts...have frequently held that impoundments of vehicles for community caretaking purposes are consonant with the Fourth Amendment so long as the impoundment decision was reasonable under the circumstances." Id. at p. 239. "The Fourth Amendment [also] permits a warrantless inventory search if the search is carried out pursuant to a standardized policy." United States v. Richardson, 515 F.3d 74, 85 (1st Cir. 2008). Finally, "[t]he subjective intent of the officers is not relevant so long as they conduct a search according to a standardized inventory policy." United States v. Hawkins, 279 F.3d 83, 86 (1st Cir. 2002); see also Coccia, 446 F.3d at 241 ("A search or seizure undertaken pursuant to the community caretaking exception is not infirm merely because it may also have been motivated by a desire to investigate crime.").

In Coccia, supra, the First Circuit concluded that police impoundment of a car from private property was reasonable and lawful under the Fourth Amendment. First, the Court noted that, because the owner of the vehicle had been detained for evaluation for an indeterminate length of time, the officers properly made arrangements for the safekeeping of the vehicle. 446 F.3d at 240. Also, it reasoned that the towing of the vehicle eliminated the need for the owner to return to the property to retrieve the vehicle and thus reduced the possibility of a future violent confrontation. Id. Additionally, there was no obvious alternative means to remove the car other than towing and impoundment since no one was immediately available to take the car on the owner's behalf. Id.

Here, it is undisputed that Plaintiff's vehicles were on ATC's private property at the time of his arrest. It is also undisputed that ATC, through one of its owners, advised the Cranston Police that it wanted Plaintiff's vehicles, the 2004 Toyota and the 1995 Ford, and certain other of Plaintiff's possessions, off of its property so that Plaintiff would not have to return to retrieve them. Finally, it

is undisputed that the Cranston Police conducted inventory searches of the vehicles pursuant to Department policy.  (See Document No. 161-43; General Order 330.41 – Motor Vehicle Inventory).

Applying the legal principles enunciated in Coccia, Plaintiff has not identified sufficient evidence from which a jury could reasonably find that the searches and seizures conducted by the Cranston Defendants were unreasonable or in any way violative of the Fourth Amendment.  Further, as made clear in Coccia, the subjective intent of the officers is not legally relevant to this inquiry and thus the "coexistence of investigatory and caretaking motives [does] not invalidate the seizure." Coccia, 446 F.3d at 241.

Plaintiff also contends that the Cranston Police did not have the authority to tow his vehicles since they were not "abandoned vehicles" under R.I. Gen. Laws § 31-42-1.  However, the Cranston Defendants do not contend that either of the vehicles were "abandoned" as defined under Rhode Island state law.  Rather, they rely upon clearly-established Fourth Amendment law, recognizing that the actions challenged by Plaintiff are authorized by the community caretaking exception to the warrant requirement.  Thus, Plaintiff's state law argument is inapposite.

For the foregoing reasons, I recommend that summary judgment enter in favor of the Cranston Defendants and against Plaintiff as to all claims in Counts I, II and V.

### B.    The Warwick Defendants

In Count I, Plaintiff alleges that Detective Petit deprived him of his Fourth Amendment rights by searching his ATC office and office computer without a warrant.  In Count II, he alleges that these searches, as well as other conduct including his arrest and detention by the Cranston Police, were committed pursuant to a conspiracy to deprive rights under color of law.  In Count III, Plaintiff claims that Detective Petit made false statements and omitted material facts from certain Search Warrant

Affidavits to mislead the Magistrate and unlawfully obtain warrants to search his property. These counts are all brought pursuant to 42 U.S.C. § 1983.

Detective Petit disputes these claims. First, he argues that summary judgment in his favor is warranted because he was given valid consent by ATC to search the computer used by Plaintiff. Second, Detective Petit denies that he ever searched Plaintiff's office and contends that Plaintiff has not presented any competent evidence to effectively dispute his uncontroverted denial. Finally, Detective Petit denies making any false and misleading statements in the Search Warrant Affidavits and argues that, even if Plaintiff could make that showing, none of the challenged statements were necessary to the determination of probable cause.

First, as to the search of Plaintiff's ATC computer, Detective Petit denies any Fourth Amendment violation because he searched it only after he obtained valid consent to do so from ATC, the owner of the computer. John Lussier signed a consent to search form for the computer on June 24, 2011. Plaintiff disputes the "genuineness and authenticity" of the consent form but, as previously noted, Plaintiff has not presented any competent evidence to support his claim and thus there is not a genuine issue of fact regarding the authenticity of the consent form. See supra at n.6.

In Schneckloth v. Bustamonte, 412 U.S. 218 (1973), the Supreme Court reaffirmed the well-established principle that the search of property without a warrant is valid under the Fourth Amendment if conducted pursuant to proper and voluntary consent. Additionally, it is well-established that consent to search may be given by anyone who possesses common authority over or other sufficient relationship to the premises or effects to be searched. United States v. Matlock, 415 U.S. 164, 171 (1974); see also United States v. Gargiso, 456 F.2d 584, 587 (2nd Cir. 1972) ("consent to a search is effective when given by one whose right to...possession is at least equal to that of the person contesting the search").

Here, Detective Petit has presented uncontroverted evidence that his search of the computer took place only after he was given consent to search by John Lussier, an owner of ATC. It is also uncontroverted that the computer in question was the property of ATC and provided to Plaintiff in connection with his employment with ATC. Finally, it is uncontroverted that ATC has access to the computer for repair, maintenance and other tasks.[10] Thus, since ATC had ownership authority over and access to the computer, it was privileged to grant consent to search to Detective Petit, and Plaintiff has shown no Fourth Amendment violation regarding the office computer search. See United States v. Zhu, 23 F. Supp. 3d 234, 238 (S.D.N.Y. 2014) (nothing that employer's ownership of an employee's assigned laptop computer "meant that it both exercised common authority over and had a substantial interest in [it]" and thus was able to grant valid consent to search). See also United States v. Carter, 569 F.2d 801, 803-804 (4th Cir. 1977) (upholding validity of employer's consent to search a company vehicle and observing that employee "could not expect to use the vehicle free from inspection by either his employer or by the police acting with his employer's consent"). Finally, Plaintiff cannot show that Detective Petit's reliance on such consent to search was unconstitutional because it was reasonable for him to conclude, under the circumstances, that one of ATC's owners had, at least, apparent authority to grant valid consent for the computer search. See United States v. Miller, 800 F.2d 129, 133-134 (7th Cir. 1986) (holding that a warrant to search is not required if voluntary consent is obtained from someone with "apparent authority" to do so, based on an objective assessment of the known facts at the time).

---

[10] Plaintiff himself acknowledges this when he asserts that the ATC Defendants improperly installed monitoring software on his computer. In addition, in his response to the ATC Defendant's Statement of Undisputed Facts, Plaintiff acknowledges that "Steve Sorel [ATC's IT Manager] could access the Plaintiff's computer under the 'administrator' account." (Document No. 171 at p. 5).

Second, as to the Search Warrant Affidavits, Plaintiff alleges that Detective Petit included false statements and omitted material facts in an effort to mislead the reviewing judicial officer. Plaintiff contends that Detective Petit did this "knowingly or with reckless disregard for the truth."

"'A Fourth Amendment violation may be established if a [plaintiff] can show that officers acted in reckless disregard, with a high degree of awareness of [the] probable falsity' of statements made in support of an arrest warrant." Burke v. Town of Walpole, 405 F.3d 66, 81 (1ˢᵗ Cir. 2005) (quoting Forest v. Pawtucket Police Dep't, 377 F.3d 52, 58 (1ˢᵗ Cir. 2004)). "Similarly, the intentional or reckless omission of material exculpatory facts from information presented to a magistrate may also amount to a Fourth Amendment violation." Id. (emphasis added). In order to establish a Fourth Amendment violation, the contested facts included in, or omitted from, a search application must be "material" to the probable case determination. Id. at p. 82 (citing Franks v. Delaware, 438 U.S. 154 (1978)).

In his Memorandum in Opposition, Plaintiff identifies several omitted facts which he asserts "relate directly to the Plaintiff's § 1983 claims against Kevin Petit." (Document No. 195-1 at pp. 1-2). While these alleged omissions do relate to Plaintiff's various claims, none of them would have been material to the probable cause determinations in issue. None of the alleged omissions are exculpatory or contradictory of facts included in the challenged Affidavits. In other words, "even had the omitted statements been included in the Affidavit, there was still probable cause to issue the warrant." United States v. Castillo, 287 F.3d 21, 26 (1ˢᵗ Cir. 2002). Accordingly, Plaintiff has not identified any omissions which support a Fourth Amendment violation.

As to affirmative statements, Plaintiff claims that Detective Petit's Search Warrant Affidavits contained numerous false and misleading statements. (See Document No. 157-2 at pp. 22-27). However, even if Plaintiff is correct, the allegedly false and misleading statements are simply not

material in this case.  "To determine the materiality of the misstatements and omissions, we excise the offending inaccuracies...,and then determine whether or not the 'corrected' warrant affidavit would establish probable cause."  Wilson v. Russo, 212 F.3d 781, 789 (3rd Cir. 2000).  Doing so in this case, the challenged Search Warrant Affidavits would still establish probable cause for the challenged searches.  In each Affidavit, the Affiant, Detective Petit, testifies that he was advised by ATC that Plaintiff was an employee of ATC, that ATC provided him with a desktop computer owned by ATC and used by Plaintiff and that his "forensic preview" of such computer revealed "numerous illegal images of pre-pubescent females" depicting "children posing nude in graphic sexual positions."  Such sworn assertions are sufficient on their own to establish probable cause to believe that Plaintiff committed the offense of possession of child pornography and that further evidence related to such crime might be found in the property, items or records to be searched pursuant to the Search Warrants.  Accordingly, Plaintiff can show no Fourth Amendment violations as to the three challenged Search Warrant Applications.

Finally, as to the search of Plaintiff's ATC office, Detective Petit denies that he searched the office.  (Document No. 166 at ¶ 36).  Plaintiff does not allege that any evidence or other items were seized from his office during this alleged search.  Plaintiff contends that this is a disputed fact and relies upon claimed discrepancies between Detective Petit's unequivocal denial and certain statements made by John Lussier in the discovery process.  In particular, John Lussier admitted, in response to a request for admission, that he "allowed Defendant Kevin Petit to search the Plaintiff's office." (Document No. 159-34 at p. 4).  (emphasis added).  He also testified that he "believe[d]" that Detective Petit entered Plaintiff's ATC office on June 24, 2011 but testified that "[h]e did not search." (Document No. 159-15 at p. 9).  When asked further by Plaintiff about Detective Petit's presence in the office, John Lussier said "[h]e was there.  I don't know – police doing police duty."  Id. at p. 25.

John Lussier was then asked "do you remember Detective Petit being in his office, though, or was he just in the office?" Id. He responded that "he was in the office. I don't know if he was in that section, his office area, but he was in the office or right outside....There was a lot of commotion at the moment." Id. John Lussier later testified that "[i]f [Detective Petit] did enter the building, he was probably just inside the hallway area." Id. at p. 27.

Plaintiff improperly equates John Lussier's statement of "police doing police duty" as meaning that Detective Petit was "conducting a search." (Document No. 178 at p. 12). That is too far a leap, particularly since John Lussier earlier testified plainly that Detective Petit "did not search" Plaintiff's ATC office. (Document No. 159-15 at p. 9).

Plaintiff has simply not identified sufficient, competent evidence to support his claim that Detective Petit unlawfully searched his ATC office. Both Detective Petit and John Lussier deny that any search took place while John Lussier admitted that he "allowed" Detective Petit to search, that does not necessarily mean that a search was actually conducted.[11] While Detective Petit testified that he could not recall if he ever entered Plaintiff's ATC office, John Lussier's testimony is ambiguous at best, and, in the end, he never clearly and unequivocally testifies that Detective Petit was in the office.

For the foregoing reasons, I recommend that summary judgment enter for the Warwick Defendants and against Plaintiff as to all claims in Counts I, II, III and V.

**C.    The ATC Defendants**

In Count IV, Plaintiff sues the ATC Defendants, "jointly and severally," pursuant to §§ 2511 and 2520 of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2511 and 2520.

_____

[11] Even if Plaintiff was able to establish a genuine factual dispute as to whether Detective Petit searched his office, the record reflects that it was "allowed," i.e., consented to, by John Lussier, an ATC owner.

(Document No. 8 at p. 17). He alleges that the ATC Defendants intentionally, and with reckless disregard for the law, unlawfully intercepted and disclosed his electronic communications including emails and online banking transactions in violation of the ECPA. Id. at p. 20.

It appears that the basic facts are undisputed. In mid-June 2011, ATC purchased and installed SSP on Plaintiff's office desktop computer. SSP produced "screen shots" of the computer screen at certain times and these were sent to a dummy email account set up by ATC and also stored on the hard drive of Plaintiff's office computer. ATC contends that SSP produced screen shots of child pornography which were provided to Detective Petit and ultimately resulted in Plaintiff's conviction for possession of child pornography.

While the basic facts are undisputed, the parties dispute whether or not SSP unlawfully "intercepted" any of Plaintiff's electronic communications. ECPA generally prohibits the intentional "interception" of "wire, oral, or electronic communications." See 18 U.S.C. § 2511. The statute defines "interception" as the "aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

In support of his Motion for Summary Judgment, Plaintiff states "[i]t is an undisputed fact that the ATC Defendants intercepted and read the contents of the Plaintiff's electronic communications." (Document No. 157 at p. 28). Plaintiff cites case law and certain portions of the SSP License Agreement as support for his position. The ATC Defendants disagree and argue no interception violative of the ECPA occurred, based on Affidavits they submitted and case law they deem relevant. The Court will discuss the parties' evidence and arguments below.

Plaintiff's Motion for Summary Judgment is supported by his citation to the SSP License Agreement, and his attempt to analogize the present case to other cases. Plaintiff argues that "[t]he screenshots evidence conclusively proves that the software captured the contents even as the Plaintiff

was creating the emails." (Document No. 157 at p. 35-36). Plaintiff claims that he "possesses...

evidence" that shows that Defendants knew the software "interception was illegal." (Document No.

157 at p. 37). The evidence that Plaintiff cites for support is the SSP License Agreement. The Section

at issue states:

> You may install and use the Software ONLY on machines owned by
> you or on machines for which you have been given explicit permission
> from the owner to use the Software on or to perform such an
> installation. If the machine is used by others, you MUST advise them
> of the presence of the Software and that their activity on the machine
> is subject to being recorded (This may also be a requirement under
> certain state or federal laws). You may not use the Software in any way
> that violates any local, state or federal laws.
>
> Under certain circumstances, the interception of communications
> without the actual or implied consent of the involved parties may be
> unlawful. This software is designed for use when any required consents
> have been obtained, and is not intended for the surreptitious
> interception of communications.
>
> Use of this Software for the illegal monitoring of others can place users
> in severe legal jeopardy. In certain locales such illegal use may
> include, but is not limited to, installing this software on machines you
> do not own, monitoring spouses without their knowledge, using this
> software for criminal financial gain, using this software to engage in
> "identity theft", using this software to engage in acts of "stalking" or
> otherwise violating any existing state or federal laws regarding the use
> of such monitoring software. Consult legal counsel should you have
> any questions as to the use of the Software under your specific
> circumstances.

(Document No. 159-8 at p. 2). Plaintiff thus concludes that "the software itself, through its own user

agreement, states that it will intercept communications." (Document No. 157 at p. 38).

Plaintiff also asserts that the case law supports his position. See, e.g. Shefts v. Petrakis, No.

10-cv-1104, 2012 WL 4049484, at *9 (C.D. Ill. Sept. 13, 2012); O'Brien v. O'Brien, 899 So. 2d 1133,

1137 (Fla. Dist. Ct. App. 2005); and Williams v. Stoddard, No. P.C. 12-3664, 2015 WL 644200 at *6

(R.I. Super. Feb. 11, 2015). In Shefts, the Court determined that the screen-shot technology at issue

in that case violated the ECPA. Relying on that holding, Plaintiff contends that SSP unlawfully intercepted and recorded the contents of his electronic communications. Plaintiff claims that SSP is "nearly identical" to the software at issue in the <u>Shefts</u> case. (Document No. 157 at p. 40). However, Plaintiff does not cite to any record evidence, such as expert testimony, to support his contention that the two software programs are "nearly identical."

In short, Plaintiff has not set forth evidence sufficient to surmount the summary judgment hurdle and establish liability in his favor as a matter of law. While Count IV of Plaintiff's Complaint contains allegations that were sufficient to satisfy the Court's notice pleading standard, the allegations fall short at this stage, where Plaintiff has not presented sufficient <u>evidence</u> to meet his burden of proof in the summary judgment context. Plaintiff's reliance upon the language contained in the SSP License Agreement as proof of "interception" is insufficient because it is conclusory, lacks sufficient foundation and is arguably hearsay. Moreover, the Court cannot accept at face value his assertion that SSP is "nearly identical" to the software at issue in the cases he cites without supporting, competent evidence, expert or otherwise. At the summary judgment phase, "the court cannot accept on faith conclusory assessments by claimants." <u>Gera v. Hasbro, Inc.,</u> No. 98-537T, 1999 WL 1012300 at *5 (D.R.I. Oct. 29, 1999) (citations omitted). Plaintiff's subjective assessment is simply not evidence. His arguments are largely based on conclusory allegations, underdeveloped argument and are not sufficiently supported with record evidence to justify judgment in his favor without the benefit of trial.

The ATC Defendants' Motion for Summary Judgment as to Count IV fares no better. Predictably, the ATC Defendants assert that SSP did not "intercept" any electronic communication and thus there was no violation of the ECPA. They contend that SSP simply sent a picture, <u>i.e.,</u> a screen shot, of the computer screen at various times after the user viewed what was on the screen. (Document

No. 162-1 at p. 29). In support of their Motion, the ATC Defendants submit two Affidavits, and rely on case law to argue that they are entitled to Summary Judgment.

First, the ATC Defendants submit the Affidavit of Russell Turner, the purported developer of SSP. In his Affidavit, Mr. Turner states, "[SSP] does not 'intercept' website page data that is transmitted by the browser to the webserver or from the webserver to the user's browser but rather interfaces with the browser itself through standard programming functions to determine if a webpage was visited. There is a delay between the time a web page event occurs and the time [SSP] creates a screenshot of what is displayed on the desktop." (Document No. 163-14 at ¶ 7). Second, the ATC Defendants present the Affidavit of Brittnee Morgan, a computer forensic examiner for the Rhode Island State Police. (Document No. 163-10). Ms. Morgan states, "[t]he screenshots taken by [SSP] did not intercept the images or materials being viewed by the user, but merely sent a picture of what was being viewed after it was viewed. The screenshots do not intercept the image or materials before the user looks at the images on the computer screen. The screenshots are taken after an email is opened and/or after a picture is looked at by the user." Id. at ¶ 11. Both Affidavits opine that SSP did not "intercept" as that term is defined under ECPA, but that is ultimately a legal issue that is the proper province of the Court. See Shefts, 2012 WL 4049484, at *2 ("term 'intercept' is a key issue in this case, and the Court does not find that the parties' technical experts are empowered to give binding opinions on the subject."). The Court cannot simply accept the pronouncement of these two Affiants that there was no interception, but must consider the totality of the evidence presented by the ATC Defendants.

Plaintiff has moved to exclude Ms. Morgan's Affidavit and Report and for a Daubert hearing regarding her qualification to testify as an expert regarding SSP. (Document No. 170). He also seeks to exclude Mr. Turner's Affidavit as undisclosed "expert testimony disguised as lay opinion

testimony." (Document No. 194 at p. 44). While Ms. Morgan was disclosed as an expert, it does not appear that a formal Rule 26(a)(2)(B) expert witness report was produced, and the ATC Defendants rely upon her October 2, 2013 forensic report prepared in connection with the criminal investigation and their Interrogatory Response. The report details a forensic examination "focused on activity in the interest of establishing possession and control of the machine and locating child pornography stored on the drive." (Document No. 163-10 at p. 5). Although SSP is referenced in the report, SSP is not the subject of the report, and there is no in-depth discussion or technical analysis of the operation of SSP. There is a conclusory description of SSP as a "monitoring software that captures screenshots, or images of what is displayed on the screen, at periodic intervals." Id. at p. 8. The report does not appear to directly support the opinions given by Ms. Morgan in paragraph 11 of her Affidavit on the issue of interception. Although Ms. Morgan's experience and expertise in conducting computer forensic examinations is well supported, her experience and expertise to opine on the workings of SSP and its compliance with the dictates of the ECPA are presently unsupported by the ATC Defendants.

As to Mr. Turner, he testifies in his Affidavit that he is the "creator" of the SSP software program. The issue of whether Mr. Turner is a lay or expert witness is not before the Court on these Rule 56 Motions. While Mr. Turner would, as the purported creator of SSP, have personal knowledge of its workings as required by Fed. R. Evid. 602, he is apparently being offered by the ATC Defendants to opine that SSP does not "intercept" data transmitted or received based on his technical knowledge of the software which may well constitute expert testimony under Fed. R. Evid. 702.[12] In addition, Mr. Turner's opinions are conclusory. For instance, he testifies that "[t]here is a delay

_____

[12] Plaintiff points out the apparent inconsistency between Mr. Turner's opinion that SSP does not intercept communications and the SSP License Agreement which warns users that the "interception of communications" without consent may be unlawful and indicates that the software is "not intended for the surreptitious interception of communications." (Document No. 159-8 at p. 2).

between the time a web page event occurs and the time SSP[ ] creates a screenshot of what is displayed on the desktop." However, he does not identify the facts or data upon which that statement is based, other than the general fact that he created SSP.

Putting aside these factual issues, the ATC Defendants assert that an interception did not occur because the data captured by SSP was only captured <u>after</u> it had been transmitted. The ATC Defendants argue that an interception can only occur, as a matter of law, when data is captured contemporaneously with its transmission, and they contend that the contemporaneity requirement is dispositive of the issue. The contemporaneity requirement is well-documented. <u>See</u> <u>Shefts</u>, 2012 WL 4049484 at *9 ("in order to 'intercept' ... an 'electronic communication,' the device in question must capture the communication 'contemporaneously' with its transmission."). <u>See also</u> <u>Global Policy Partners, LLC v. Yessin</u>, 686 F. Supp. 2d 631, 638 (E.D. Va. 2009) ("[c]ourts applying the ECPA have consistently held that a qualifying "intercept" occurs only where the acquisition of the communication occurs contemporaneously with its transmission by its sender."). <u>But</u> <u>see</u> <u>Williams v. Stoddard</u>, 2015 WL 644200 *6 (stating that the court "declines to foist a wholesale contemporaneity requirement onto [ECPA's] definition of 'intercept[ion]' in the case of electronic communications."). Although courts typically consider the contemporaneous capture of data to be an interception, the <u>Shefts</u> court candidly noted that "[t]here are not many cases analyzing the application of the ECPA to screen-capture technology." <u>Shefts</u>, 2012 WL 4049484, *9; <u>see also</u> <u>Williams</u>, 2015 WL 644200 at *6 ("there is no controlling rule dictating whether an interception of an electronic communication under [ECPA] must occur contemporaneously with transmission."). Thus, since the case law may not be as definitive as the ATC Defendants suggest, the Court is hesitant to make binding conclusions of law in a vacuum without the benefit of a full evidentiary record on the operation of SSP as installed on Plaintiff's office computer.

Viewing the evidence set forth by the ATC Defendants in the light most favorable to Plaintiff, as the Court is required at this stage, the ATC Defendants have not met their Rule 56 burden.  "[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." <u>Brennan v. Town of S. Kingstown</u>, No. CA 10-186S, 2011 WL 1898248, at *3 (D.R.I. Apr. 14, 2011) Report and Recommendation adopted, No. CA 10-186S, 2011 WL 1930663 (D.R.I. May 19, 2011) (<u>citing</u> <u>Coyne v. Taber Partners I</u>, 53 F.3d 454, 460 (1st Cir.1995)). Furthermore, "[s]ummary judgment is not appropriate merely because the facts offered by the moving party seem most plausible, or because the opponent is unlikely to prevail at trial. If the evidence presented is subject to conflicting interpretations, or reasonable men might differ as to its significance, summary judgment is improper." <u>Id.</u> (<u>citing</u> <u>Gannon v. Narragansett Elec. Co.</u>, 777 F. Supp. 167, 169 (D.R.I.1991) (citation and internal quotation marks omitted)).

Neither Plaintiff nor the ATC Defendants have sustained their respective burdens as to the ECPA claims at this stage.  Accordingly, summary judgment cannot be entered for or against Plaintiff on Count IV.  Accordingly, I recommend that Plaintiff's Motion for Summary Judgment as to Count IV be DENIED and that the ATC Defendants' Motion for Summary Judgment as to Count IV also be DENIED.

**Conclusion**

For the foregoing reasons, I recommend that:

1.      Plaintiff's Motion for Summary Judgment (Document No. 157) be DENIED;

2.      the Cranston Defendants' Motion for Summary Judgment as to Counts I, II and V (Document No. 174) be GRANTED;

3.      the Warwick Defendants' Motion for Summary Judgment as to Counts I, II, III and V (Document No. 165) be GRANTED; and

4.      the ATC Defendants' Motion for Summary Judgment (Document No. 162) as to Counts I and II[13] be GRANTED and DENIED as to Count IV.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


  /s/   Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
June 2, 2015

---

[13] Since I conclude that summary judgment should enter for Defendants on Plaintiff's various constitutional claims, his civil rights conspiracy and municipal liability claims in Counts II and V also necessarily fail.